UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RED ROCK COMMUNICATIONS, INC., a Nevada Corporation,<br><br>                Plaintiff,<br><br>v.<br><br>AMERICAN TELECASTING, INC., a Delaware corporation; SUPERCHANNELS OF LAS VEGAS, INC., an Arizona corporation; ROBERT D. HOSTETLER; DONALD R. DEPRIEST; CFW COMMUNICATIONS FOUNDATION; CFW COMMUNICATIONS COMPANY; MCT INVESTORS, L.P.; DOES 1 through 10; and ROE CORPORATIONS 1 through 10,<br><br>                Defendants. | CV-S-01-0611-PMP (LRL)<br><br>O R D E R |
| AMERICAN TELECASTING, INC., a Delaware corporation,<br><br>                Counterclaimant,<br><br>v.<br><br>RED ROCK COMMUNICATIONS, INC., a Nevada Corporation,<br><br>                Counterdefendant. | |

       Presently before the Court is Defendant American Telecasting, Inc.'s ("ATI") Objection to Special Master Report (Doc. #309), filed on August 8, 2006, and Errata [Doc. #314] thereto filed on August 16, 2006.  Also before the Court is Plaintiff Red Rock

Communications, Inc.'s ("Red Rock") Limited Objection to Special Master's Report (Doc. #310), filed on August 8, 2006. The parties filed their respective Responses (Doc. #315, #316) on August 16, 2006. The Court held a hearing on these objections on August 29, 2006.

**I. BACKGROUND**

The parties are familiar with the factual background out of which this dispute arises, and the Court will not recount it here. It suffices to state the parties dispute the calculation of certain excess cash contributions, management fees, and interest thereon that ATI charged to Red Rock upon Red Rock exercising the put option in the Shareholders' Agreement to offset the amount ATI owed Red Rock for Red Rock's shares in Superchannels of Las Vegas ("SCLV").

Over one year ago, on August 23, 2005, this Court entered an Order (Doc. #229) addressing ATI's motion to reconsider (Doc. #218) a prior Court Order (Doc. #213) denying ATI's original motion for summary judgment (Doc. #133) on its claim that ATI's excess cash contributions, deferred management fees, and interest thereon exceeded and offset the amount ATI owed to Red Rock on the put option sale under the Shareholders Agreement. In doing so, the Court found, after a series of motions for reconsideration, that genuine issues of material fact remained regarding the setoff calculation.

In moving the Court to reconsider its denial of summary judgment, ATI asked the Court to appoint a special master under Federal Rule of Civil Procedure 53 to resolve this complex computation of the appropriate setoff to which ATI is entitled. Red Rock previously had indicated its desire to appoint a special master. In a joint motion for clarification and instructions to the special master (Doc. #238), the parties stated their positions regarding the scope of the issues for the special master to address as follows:

> Red Rock maintains that the special master is to review all evidence of offsets and management fees, quantify those amounts and then apply the contractual formula to the totals as set forth in the parties'

      Amendment to Shareholders' Agreement. Red Rock believes that those amounts should be quantified from the time that excess cash contributions and management fees started being applied, forward through the exercise of the Put Option. The Court can then use those calculations to determine the amount of the offsets, whether the starting point figure set forth in the Amendment should be applied and when the accrual of management fees should be terminated. Red Rock maintains that the Amendment defines excess cash contributions specifically and that the definition conflicts with the "starting point" figure set out in the Amendment. Red Rock further asserts that none of these issues have been or are subject to summary adjudication.

      . . . ATI maintains . . . the Special Master's calculation must commence with the "starting point" figure of $1,198,816.18 contained in Section 5 of the Amendment to Shareholders' Agreement. From there, the Special Master may only consider evidence on the amount of contributions made and fees incurred after September 30, 1998, and apply those amounts to the formula contained in the Amendment to Shareholders' Agreement. The Special Master may not consider new challenges to discrete set-offs that were not specifically made during briefing on ATI's Motion for Summary Judgment, as ATI's entitlement to said set-offs has already been summarily adjudicated by this Court in its previous orders.

(Resp. to Order of Aug. 24, 2005 & Joint Mot. for Clarification & Request for Instructions to Special Master at 2.)

      On October 5, 2005, the Court entered its Order on the joint motion for clarification as follows:

      Because Red Rock challenged only specific setoffs at the summary judgment stage, Red Rock may not now challenge the basis and propriety of every setoff and management fee before the special master. However, at issue in this case is whether ATI improperly included $600,000 in the setoff calculation. Thus, to the extent ATI will need to establish that the disputed $600,000 is not included in the setoff, ATI should be prepared to prove what each charged setoff represents.

      . . . ATI also has insisted that the $600,000 is not included in ATI's offered calculation, either in the setoffs or in the starting point figure. ATI should be prepared to offer proof establishing that fact before the special master.

(Order [Doc. #239] dated Oct. 5, 2005 at 2.)

1     The proceedings before the Special Master lasted several months during which
2 this case effectively was stayed.  On July 14, 2006, Special Master Swarts filed his First
3 Report to the Court (Doc. #299).  That same day, the Court entered an Order (Doc. #298)
4 which in part addressed Red Rock's motion to compel ATI to provide the special master
5 evidence substantiating each of its claimed offsets.  In denying Red Rock's motion to
6 compel, the Court stated:

> The Court will not direct ATI to produce any particular evidence before the Special Master.  ATI has moved for summary judgment and bears the burden of establishing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  To the extent ATI fails to submit sufficient evidence to meet this burden, the result will be denial of its motion for summary judgment, and the parties will proceed to trial on the offset issue.

11 (Order [Doc. #298] dated July 14, 2006 at 5.)
12     In his Report, Special Master Swarts indicated that he did not examine the
13 parties' books and records to determine the submitted data's veracity.  (Special Master's
14 First Report to the Ct. at 1-2.)  He considered whether the disputed $600,000 still remained
15 in the calculation as well as when ATI should have ceased charging Red Rock for
16 contributions and management fees, and prepared three different computations using
17 different assumptions, each of which he calculated with no compounding of interest.  (Id.)
18     With respect to his first calculation, reflected in Exhibit A to his Report, Special
19 Master Swarts used ATI's data on excess cash contributions and deferred management fees
20 to determine total amounts due by November 30, 2002 (the date he suggests the put option
21 sale should have closed); June 30, 2002 (the date Red Rock exercised the put option); and
22 September 30, 2004 (the final month of data ATI provided).  (Id. at 2-3.)  Exhibit A thus
23 represents Special Master Swarts' calculations using ATI's numbers, including the disputed
24 $600,000 in the starting point figure, and comparing ATI and Red Rock's alternative
25 methods of calculating offsets.  (Id. at 4-5.)  Special Master Swarts indicated his normal
26 practice would be to compute amounts as of the actual closing date, but because there is no

actual closing date, the issue remains open. (Id. at 3.) However, he suggested the logical date in this instance would be the theoretical closing date of November 30, 2002. (Id.) As of that date, ATI's method of calculating offsets under Section 13 of the Amendment amounts to $2,701,260.15 while Red Rock's amounts to $1,332,093.29. (Id. at 4.) Special Master Swarts explained the discrepancy between these amounts arises from the parties' dispute over whether the Section 13(d) percentage applies to total contributions as ATI posits or whether ATI's raw data must be converted to Section 13(a)'s defined term of excess contributions before applying the percentage as Red Rock asserts. (Id.)

With respect to the disputed $600,000, Special Master Swarts found ATI "failed to prove" the disputed amount was not included in the starting point figure. (Id.) He noted that although ATI presented evidence supporting its new argument that ATI properly charged Red Rock for the $600,000 as a SCLV obligation, resolution of that question was outside the scope of his review. (Id.) Exhibit B thus represents Special Master Swarts' calculations deleting the $600,000 from the starting point figure based on his finding that the $600,000 was included in the starting point figure. (Id. at 5-6.) Deleting this from the starting point figure leaves an adjusted starting point figure of $295,720.69 as of September 20, 1998. (Id.) Swarts further recommended management fees cease to be charged to Red Rock as of the closing date of November 30, 2002, the proposed closing date. (Id.)

As reflected in Exhibit B, ATI's calculations after subtracting the $600,000 but using ATI's method of applying the percentage results in an offset amount of $2,094,186.06. (Id.) Using Red Rock's method of first converting total contributions to excess contributions and then applying the percentage, the offset amount is $1,083,634.65. (Id.) Special Master Swarts adopted Red Rock's position as the correct method of calculating the offsets. (Id. at 7.) "Accordingly, in my opinion, after adjusting the starting contributions by subtracting $600,000 and converting Contributions to 'Excess Contributions', the mandatory contribution due SCLV by Red Rock using the adjusted data is $1,083,634.65." (Id.)

5

Special Master Swarts also provided Exhibit C, which begins with a starting point figure of zero. (Id.) Swarts notes he provided Exhibit C to compare his calculations with Red Rock's proffered calculations. (Id.)

Turning to the parties' objections to the Report, ATI raises four objections. First, ATI contends the Special Master inappropriately interpreted Sections 13(a) and 13(d) of the Amendment in a manner contrary to this Court's prior rulings on these sections. Specifically, ATI objects to the Special Master taking ATI's total contributions, converting them to excess contributions under Section 13(a), and then applying the percentage from Section 13(d). According to ATI, this exceeded the scope of the Special Master's referral and contradicts this Court's prior ruling on ATI's initial motion for summary judgment that ATI was entitled to apply the percentage as it had. Second, ATI contends this Court should enforce the contractually agreed upon starting point figure. ATI asserts that to avoid a potential issue of material fact for summary judgment purposes, ATI attempted to demonstrate the $600,000 was not in the starting point figure, but ATI since has uncovered evidence demonstrating it properly charged the $600,000 to Red Rock all along. Accordingly, ATI objects to removing the $600,000 from the calculation. Third, ATI objects to using a cut-off date of November 2002 because Red Rock allegedly has asserted shareholder interests beyond that date. Finally, ATI asserts it continues to lose interest on capital contributions and deferred management fees beyond November 2002 for which the Special Master did not account.

Red Rock also lodges four objections to the Special Master's Report. First, Red Rock contends Exhibit C, not Exhibit B, is the correct calculation because Red Rock contributed $462,000 to SCLV in 1997, which set the parties' capital contributions at relatively equal to their proportionate ownership interests as of September 1998. Red Rock thus argues that as of the starting date, the balance of "excess" contributions was zero, as opposed to the $295,720.69 in Swarts' Exhibit B. Second, Red Rock disputes Special

6

Master Swarts' application of management fees through November 2002 even though Red Rock exercised its put option in June 2002. Red Rock notes that because it would not benefit from any increased stock value as of June 2002, it concomitantly should not be charged for management fees incurred or capital contributions made after that date. Third, Red Rock argues it should not be charged for management fees and excess cash contributions after September 1999 because after Sprint acquired ATI, ATI unilaterally shut down SCLV's operations to Red Rock's detriment. Finally, Red Rock argues the 17% interest rate charged to Red Rock should have been adjusted downward as interest rates dropped generally, particularly because ATI advanced funds to SCLV without corporate consideration or approval by SCLV.

Although much has intervened, ultimately this issue still is before the Court on ATI's motion for summary judgment in which it argued that because Red Rock owed more in offsets than ATI owed for the put option price, no genuine issue of fact remained that Red Rock must disgorge its SCLV shares to ATI with no sums due and owing from ATI to Red Rock.

## II. OBJECTIONS TO THE SPECIAL MASTER'S REPORT

### A. EXCESS CONTRIBUTION CALCULATION

The Court will grant ATI's objections to the Special Master's interpretation of Sections 13(a) and (d) of the Amendment to the Shareholders' Agreement. This Court previously entered two Orders indicating ATI properly applied the Section 13(d) percentage. (Order [Doc. #170] dated Nov. 18, 2004 at 36; Order [Doc. #193] dated March 31, 2005 at 6.) In its initial Order on summary judgment of November 18, 2004, the Court stated "[u]nder the Amendment's plain language, ATI was entitled to calculate Red Rock's share as 70% of the excess cash contributions." (Order [Doc. #170] at 36.) However, the parties continue to dispute the definition of what constitutes an excess cash contribution to which that percentage would apply.

Section 13(a) of the Amendment defines the term "Excess Cash Contributions" to mean "the amount at such time of unreimbursed cash contributions by ATI or Red Rock which are in excess of such party's then existing stock ownership percentage in SCLV." (App. to Red Rock's Summ. J., Opp'ns [Doc. #141], Ex. A, Attach. 4 at 16.) Section 13(d) then provides ATI is entitled to charge Red Rock for "a fraction, the numerator of which is the Red Rock Percentage and the denominator of which is 100 minus the Red Rock Percentage, multiplied by the then applicable Excess Cash Contribution." (Id. at 17.) The Agreement states the fraction, which equates to approximately 70%, is multiplied by the Excess Cash Contribution, a term defined within Section 13(a).

ATI argues every dollar it contributed beyond its proportionate share was "in excess" of its then existing equity interest. For example, if ATI contributed $100, ATI argues $100 was in excess of its then existing proportionate share. In contrast, Red Rock argues only forty-two cents of every dollar ATI contributed were "in excess" of ATI's then-existing fifty-eight percent share. For example, if ATI contributed $100, only $42 of that is in excess of ATI's fifty-eight percent share.

The "purpose of contract interpretation is to determine and enforce the parties' intent." US West Communications, Inc. v. Ariz. Corp. Comm'n, 915 P.2d 1232, 1235 (Ariz. App. Div. 1 1996).[1] In interpreting a contract, the Court must determine whether the parties' agreement is ambiguous. McDaniel & Assoc. v. Merodias Constr. Co., Inc., 585 P.2d 266, 268 (Ariz. App. 1978). Whether the contract is ambiguous is a question of law for the Court. Chandler Med. Bldg. Partners v. Chandler Dental Group, 855 P.2d 787, 791 (Ariz. App. Div. 1 1993). If the agreement's language is plain and unambiguous, the Court applies the contract as written. Id. However, when the contract's terms are reasonably susceptible

---

[1] The Shareholders' Agreement specifies that it "shall be governed, construed and enforced in accordance with the laws of the State of Arizona." (App. to Red Rock's Summ. J., Opp'ns [Doc. #141], Ex. A, Attach. 3 at 11.)

1  to more than one interpretation, extrinsic evidence is admissible to determine the parties'
2  true intent.  Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1140 (Ariz. 1993).
3  Determining the parties' true intent or the circumstances that may elucidate ambiguous
4  language may require fact finding by the trier of fact.  US West Communications, Inc., 915
5  P.2d at 1235; Ash v. Egar, 541 P.2d 398, 401 (Ariz. App. 1975).   When interpreting a
6  contract, "a court may consider surrounding circumstances, including negotiation, prior
7  understandings, and subsequent conduct[.]"  Taylor, 854 P.2d at 1139.  Where a party offers
8  extrinsic evidence to determine the meaning of contractual language, the court first must
9  consider the offered evidence that allegedly "illuminate[s] the meaning of the contract
10 language, or demonstrate[s] the parties' intent," and determine whether such evidence has
11 any probative value in determining the parties' intent.  Id. (citing 3 Corbin § 542, at 100-01
12 (1992 Supp.)).  Next, the court interprets the contract subject to the parol evidence rule's
13 preclusion of extrinsic evidence that would vary or contradict the meaning of the written
14 agreement's terms.  Id.  Although the parol evidence rule would seem to bar offering
15 extrinsic evidence regarding the parties' intent,

> [t]he meaning that appears plain and unambiguous on the first reading of a document may not appear nearly so plain once the judge considers the evidence. In such a case, the parol evidence rule is not violated because the evidence is not being offered to contradict or vary the meaning of the agreement.  To the contrary, it is being offered to explain what the parties truly may have intended.

20 Id. at 1140.  For example, where the parties "use language that is mutually intended to have a
21 special meaning, and that meaning is proved by credible evidence, a court is obligated to
22 enforce the agreement according to the parties' intent, even if the language ordinarily might
23 mean something different."  Id. at 1139 (citing Restatement (Second) of Contracts § 212
24 cmt. b, illus. 3 & 4 (1979)).  In contrast, "a contract may be susceptible to multiple
25 interpretations and therefore truly ambiguous yet, given the context in which it was
26 negotiated, not susceptible to a clearly contradicting and wholly unpersuasive interpretation

9

1  asserted by the proponent of extrinsic evidence." Id. at 1140.

2    The contractual language in the Amendment defining "excess cash contribution" is, by itself, ambiguous. It is not clear from the definition itself whether the amount then "in excess" of ATI's proportionate share is the total amount of the contribution or forty-two percent of that amount. Red Rock and ATI assert diametrically opposed positions on this issue. However, when considered in light of the parties' expressed intent as specifically stated in the Amendment, the language is unambiguous and susceptible of only one reasonable interpretation. The Amendment states the "parties desire, to the extent possible, that cash contributions by shareholders to SCLV be made in proportion to the shareholders' equity interests in SCLV . . . ." (App. to Red Rock's Summ. J. Opp'ns [Doc. #141], Ex. A, Attach. 4 at 16.) Only ATI's proposed definition of excess cash contributions effectuates the parties' intent. For example, if ATI contributed $100, under ATI's formulation all $100 is "in excess" of ATI's share. Under Section 13(d), the 70% multiplier is applied to the $100, for Red Rock's contribution amount of $70. This makes for a total contribution from both parties of $170. This works out roughly to the parties' relative equity interests, as ATI would have contributed $100, which amounts to approximately fifty-eight percent of $170 ($170 x .58 = $98.60), and Red Rock would have contributed $70, which amounts to approximately forty-two percent of $170 ($170 x .42 = $71.40).

  Red Rock's proposed methodology does not effectuate the parties' expressly stated intent. Under Red Rock's method, if ATI contributed $100, only $42 of that amount would be in excess of ATI's proportionate equity interests. Red Rock then would multiply that amount by the 70% multiplier, resulting in Red Rock's contribution being only $29. That would amount to a total contribution from both parties of $129. Of the $129, ATI would have contributed approximately 77% rather than its 58% equity share. Further, Red Rock would have contributed only $29 when its proportionate equity interest would have required it to contribute $54.18 ($129 x .42 = $54.18).

1    Consequently, Section 13 of the Amendment, when read in its entirety and
2 interpreted to effectuate the parties' express intent, is not reasonably susceptible to more
3 than one interpretation, and is unambiguous.  Accordingly, the Court affirms its earlier
4 rulings that, as a matter of law, ATI was entitled to apply the 70% multiplier to all
5 contributions it made in excess of its proportionate share as reflected in ATI's methodology
6 of calculating the setoffs.  To the extent the Special Master concluded otherwise, the Court
7 does not adopt his recommendation.
8    This ruling does not resolve the entirety of ATI's motion for summary judgment,
9 however.  Even using ATI's methodology, ATI owes more to Red Rock than Red Rock
10 owes to SCLV if the $600,000 is removed from the starting point figure.  Accordingly, the
11 question remains whether the disputed $600,000 remains in the starting point figure, and, if
12 it does, whether ATI nonetheless is entitled to summary adjudication.
13    **B.  The Disputed $600,000**
14    ATI contends this Court should enforce the agreed upon starting point figure.
15 ATI asserts that to avoid a potential issue of material fact for summary judgment purposes,
16 ATI attempted to demonstrate the $600,000 was not in the starting point figure, but ATI
17 since has uncovered evidence demonstrating it properly charged the $600,000 to Red Rock
18 all along.  Accordingly, ATI objects to removing the $600,000 from the calculation.  ATI
19 contends the Special Master "concluded"  and "agreed" ATI properly charged Red Rock for
20 the $600,000.  (ATI's Objection to Special Master Report [Doc. #309] at 3, 11.)  The Special
21 Master made no such conclusion.  He noted only that ATI had presented evidence that
22 "supports" its new argument that the $600,000 was a SCLV obligation with the
23 "implication" that it properly belongs in ATI's capital contributions, but resolving that issue
24 was outside the scope of his referral.  (Special Master's First Report to the Ct. at 4.)  Red
25 Rock responds that the Special Master correctly determined ATI failed to demonstrate the
26 $600,000 was not in the starting point figure.

11

The parties agreed in the Amendment to the Shareholders' Agreement that ATI's excess cash contributions as of September 1998 amounted to $895,720.69 ($1,198,816.18 - $303,095.49). (App. to Red Rock's Summ. J. Opp'ns [Doc. #141], Ex. A, Attach. 4 at 16.) Rarely will a contractual number to which the parties mutually agreed be ambiguous. However, here the parties specifically defined the term "excess cash contribution," and expressly stated their intent was that cash contributions by SCLV's shareholders be made in proportion to their respective equity interests in SCLV. Given this stated intent, and given Red Rock's offered extrinsic evidence that ATI had not made $895,720.70 in excess contributions properly charged to Red Rock by September 1998, the starting point figure is ambiguous. It is unclear whether the parties intended to effectuate their stated intent that the respective contributions be proportionate to equity interests and made a mathematical error, or whether, regardless of what happened before September 1998, the parties intended the $895,720.69 figure to control even if it did not reflect the actual state of the relative contributions to that date. The parties' intent in this respect is unclear and thus remains a material issue of fact for the jury. US West Communications, Inc., 915 P.2d at 1235; Ash, 541 P.2d at 401. The Court therefore will deny ATI's objection on this ground.[2]

ATI did not present this evidence or argument until the proceedings before the Special Master. The Court will not entertain on summary judgment ATI's evidence, presented at this late date, that the $600,000 is properly charged to SCLV, and thus to Red Rock.

As reflected in Special Master Swarts' Exhibits B and C, if the starting point figure does not accurately reflect the parties' intent in the Amendment, even if the Court

---

[2] The Court also will deny Red Rock's objection regarding whether Exhibit B or C to the Special Master's Report accurately reflects the correct amount of the starting point figure, as the Court is not ruling as a matter of law on that issue. It is for the trier of fact to determine the parties' intent regarding the starting point figure.

12

uses ATI's method of calculating excess cash contributions from October 1998 forward, ATI has not established as a matter of law it is entitled to more in offsets than ATI owes Red Rock on the put option sale unless the cutoff date for determining these values extends beyond November 2002.

### C. November 2002 Cutoff Date

ATI objects to the Special Master's suggestion of using a cut-off date of November 2002 because Red Rock allegedly has asserted shareholder interests beyond that date. Red Rock responds that the Special Master found in favor of ATI by applying the November 2002 date because the actual cutoff date should be June 2002, when Red Rock exercised its put option. Red Rock argues that because that sale did not go through on November 2002, Red Rock has monitored shareholder meetings because it still held the shares even though the transaction should have been consummated previously. Red Rock notes that because it could not share in any gain in SCLV's value after it exercised its put option, it likewise should not be held to continue to accrue associated costs.

Section 13(d) of the Amendment provides that if Red Rock receives money from the sale of its SCLV shares, it "shall immediately contribute to SCLV" its share of the excess cash contributions, deferred management fees, and interest thereon. (App. to Red Rock's Summ. J., Opp'ns [Doc. #141], Ex. A, Attach. 4 at 17.) Accordingly, the Amendment specifies the offsets become due upon Red Rock receiving funds from the sale of its shares. Because the put option sale was set to close on November 30, 2002, that is the date Red Rock would have received funds and upon which date it immediately would have been required to fund SCLV. Accordingly, the Court adopts the Special Master's position that the November 2002 date is the cutoff date. After that date, ATI no longer was entitled to charge management fees, excess cash contributions, or 17% interest thereon under the contractual provisions.

**D.  Interest Beyond November 2002**

ATI asserts it continues to lose interest on capital contributions and deferred management fees beyond November 2002 for which the Special Master did not account.  To the extent the starting point figure does not reflect the parties' intent, Red Rock may be entitled to interest on the funds for which ATI owes on the put option which it has not paid Red Rock.  ATI has failed to present evidence establishing as a matter of law that it is entitled to interest beyond that previously calculated and if so entitled, the amount of such interest combined with the proper offset amount exceeds the put option price plus any interest ATI may owe Red Rock.  The Court therefore will deny this objection to the Special Master's Report.

**E.  Earlier Cutoff Date on Management Fees**

Red Rock objects to the Special Master's Report's calculation to the extent it included management fees beyond September 1999, when Sprint purchased ATI and allegedly shut down SCLV's operations.  As this Court already ruled, this is not an issue for the offset calculation. (Order [Doc. #239] dated Oct. 5, 2005 at 2-3.)  If Red Rock establishes ATI shut down SCLV's operations in breach of its duties to Red Rock, Red Rock may claim improperly charged management fees as damages.  However, Red Rock first must prove to a finder of fact that ATI engaged in such conduct.  Accordingly, the issue is a matter of damages on Red Rock's surviving claims, not as a matter of the proper calculation of the offsets.  The Court therefore will deny this objection.

**F.  Interest Rate**

Finally, Red Rock objects to the use of a 17% interest rate.  As this Court previously has ruled, Red Rock contractually agreed to the 17% interest rate in the Amendment. (Order [Doc. #170] dated Nov. 18, 2005.)  Accordingly, ATI contractually was entitled to charge the 17% interest rate until November 30, 2002, when the put option sale should have closed.  The Court therefore will deny this objection.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant American Telecasting, Inc.'s Objection to Special Master Report (Doc. #309) is hereby GRANTED with respect to ATI's objections regarding the method of calculating excess contributions, and is DENIED in all other respects.

IT IS FURTHER ORDERED that Plaintiff Red Rock Communications, Inc.'s Limited Objection to Special Master's Report (Doc. #310) is hereby DENIED.

IT IS FURTHER ORDERED that Defendant American Telecasting, Inc.'s Motion for Summary Judgment (Doc. #133) is hereby GRANTED in part and DENIED in part. The motion is granted as follows:  (1) ATI's method of calculating excess cash contributions is, as a matter of law, the correct contract interpretation; (2) the cutoff date for charging any excess cash contributions, deferred management fees, and interest thereon is summarily adjudicated to be November 30, 2002; and (3) ATI is contractually entitled to charge 17% interest on Red Rock's portion of excess cash contributions and deferred management fees through November 30, 2002.  The motion is denied with respect to the starting point figure.  The issue of the parties' intent regarding the starting point figure is therefore a matter for jury trial.

IT IS FURTHER ORDERED that the parties shall proceed with preparation of their trial briefs and proposed jury instructions, and shall file the same not later than Tuesday, September 5, 2006.  The parties shall also file by September 5, 2006, a brief Joint Statement of the Case, which the Court will employ to explain the nature of the case to the prospective jury panel during jury selection.

DATED:  August 30, 2006

_____
PHILIP M. PRO
Chief United States District Judge

15